And I'll now call the third case. Rico Mitchell v. Lt. Smith et al. We have Craig Fizer for the appellants and Michael Baumrind for the appellee. Mr. Fizer, I see that you've reserved five minutes for rebuttal. Are you ready to proceed? Yes, your honor. Please begin. May it please the court. My name is Craig Fizer and I'm here on behalf of the three individual officers in this case. This is a qualified immunity case and the issue is, as a matter of law, whether under clearly established precedent, opening a piece of legal mail one time during an inmate's two-year period of incarceration at a jail violates the inmate's First Amendment or chills the inmate's First Amendment rights to communicate with his constitutional violation, much less one that's clearly established. We have three officers involved in this case. One is a correctional officer, Officer Perkins, and she's the only one that's alleged to have done really anything with Mitchell's legal mail. And that's one time she, the allegations in the Fifth Amendment complaint are pretty simple against her. One time she apparently opened his piece of legal mail, removed photographs, which in the Duval County Jail are considered contraband. Inmates are not allowed to have those in their cell. So she removed the photographs, gave the piece of mail back to Mr. Mitchell and told him, I've put your photographs in the property room. And under the procedures of the jail, inmates can go to the property room and review legal photographs. Any other kind of photographs are contraband that's actually destroyed, but legal related photographs. I think we all agree that Al-Amin is the key case here. And among other things, it says a reasonable official would have known in 2004 to 2005, that opening properly marked incoming attorney mail outside the inmate's presence is unlawful and unconstitutional. How is that not enough? Your Honor, it's certainly true that Al-Amin in a couple of different places states that one inmates of course have the right, still have a First Amendment right, retain it to receive and send out mail period. And they do have a right based on their ability to communicate confidentially with their attorneys to have their legal mail opened in their presence. So those this case in that one, it had two different sections and two different claims. One was an access to courts claim, meaning the inmate was somehow claiming that his actual case, his criminal case was damaged by what the prison officials were doing there. In that case, it was 13 envelopes that were attached to the complaint, all legal mail, four of which actually said attorney client privilege legal mail that were opened over a period of time. The court said, you don't have an access to courts claim because you didn't have an injury or it didn't affect your case at all. But then if you look at the second section, that's talking about a free speech claim based on the ability to communicate and not have your conversations with your attorney chilled by having your mail constantly monitored. The court goes into a whole analysis of a, it has to be a pattern and practice of opening legal mail in order for it to be a First Amendment violation. Citing the Jones case, which is out of the Third Circuit, favorably saying that case establishes that a pattern and practice of doing this would violate an inmate's First Amendment rights. At the very least, since Al-Amin, courts have clearly been at least confused by what the court was getting at there. There's several cases and we cite them on pages 19 and 20 of our initial brief, but just a string of lower court cases, including all three states in this circuit, Florida, Alabama, and Georgia, have said, you don't state a First Amendment claim unless you have a pattern and practice. You can't state a claim that your communications have been chilled with your attorney based on an isolated incident. It has to be unjustifiable, repeated opening of legal mail. And none of those cases really come close to this case, which is clearly a very isolated incident. We don't have any indication of what that legal mail was. We don't have any indication, there's no allegation that Officer Perkins had any ulterior motive or even that she really intentionally opened the mail. It's just that presumably she got all of Mr. Mitchell's mail and opened all of it and found photographs of this piece of mail and gave it back to him. There's no allegation that all of his mail was being withheld from him, that he wasn't getting his legal mail, or even that any of his communications were chilled with his attorney at all during his two-year period at the jail. It's just a one-time incident that photographs were in a piece of legal mail. Mr. Fieser, Mr. Fieser, and I apologize I mispronounced your name earlier, you just referenced that there's nothing in the record regarding, you know, the intention of the officer who opened the mail. What role, if anything, if any, should the intent of the officer play in this analysis? There is some indication under the case law that if there's some kind of nefarious motive or something going on, but again there are cases that are talking about much more egregious conduct of what occurred in this case. You do have at least one case that the APPLI cites, Lemon v. Duggar, which comes close to being one incident of actually opening legal mail, but it's much more egregious than what happened here. That was a case where an inmate's mail was actually opened, all of it was read, and it was pursuant to an actual practice that the prison officials had of doing this presumably more than once. There was actually a failure to train allegation in that case. So motive could play a role, but you don't even have, even if it did, you don't have any allegation relating to that as far as Officer Perkins is concerned. The only allegation he alleges against her is pretty mild. It's just that one day she gave me a piece of my mail that was marked legal mail. You know, we don't know, we don't have that, so we don't know what it said or what it looked like, but you know, going on the allegations of the complaint, it was marked legal mail. She gave it back to me, it appeared to be open, and she's told me your photographs are in the property room if you want to see them. That's really all we have at all. That just doesn't come close to anything that would shield communications with his attorney. Keep in mind, this is an inmate who pled guilty voluntarily to both murder and tampering with witness. There is an allegation in the complaint that five months went by and there was another issue with his non-legal mail, mail to his wife, that appeared to have been mislaid or tampered with or some other mail got in the envelope, and that there's actually two other officers involved in this case, one of which is a supervisory officer, Detective Simpson, Detective Eileen Simpson, who did issue a directive saying we need to monitor this inmate's mail. Well, we know that this inmate was convicted for witness tampering, and there's no constitutional issue with monitoring non-legal mail for the purpose of safety and security at a jail, and there's no indication that that particular supervisor ordered all of his mail to be opened outside of his presence, including his legal mail. There's no other mention of legal mail in the complaint at all. All that officer did was say we need to be monitoring this particular prisoner's mail, and there's another allegation against a Lieutenant Clark, who apparently intercepted one of Mitchell's grievances regarding outgoing mail, and again, we don't know what the outgoing mail was, but he told him to stop grieving about the fact that his mail was being monitored. We would argue that doesn't state a constitutional violation either. Keep in mind that the district court here didn't even do the entire qualified immunity analysis. All the district court said was there's enough here to plausibly state a First Amendment violation, therefore I'm denying qualified immunity to all of the officers. The district court, at the very least, was required to do the complete analysis against each individual officer, and that never even happened. We would argue that the supervisory officers certainly have nothing coming close to a constitutional violation alleged in the complaint, but even Officer Perkins, the one time that she opens a piece of mail to remove contraband from the mail is just simply not enough under Al-Amin, and certainly all of the cases after Al-Amin to state a clearly established constitutional First Amendment violation. Mr. Fieser, on that point, so I Al-Amin that one opening of legal mail outside the presence of the prisoner that was not clearly established, thus qualified immunity. Are you also saying that one opening of legal mail outside the presence of the prisoner was not a constitutional violation? Under the precedent at that time, under Al-Amin and under the cases that have interpreted Al-Amin, we would argue that that's not a First Amendment violation. It's not a constitutional violation. So where would we draw the line that, okay, pattern and practice is a violation, one is not, what about two, what about three, what about five? Most of the case law that we cite, and I think both sides did a pretty thorough job of researching every possible case for this kind of thing has happened, and looking at the briefs, there's just a litany of cases cited. As I said, the closest one is the Lemon case, which looks to be one instance, combined with some other egregious conduct and possibly the allegation of a practice of doing it. Another case is Ford v. Hunter, which is a 2013 case from this court, where you had two instances of legal mail being opened and then another instance of legal mail being opened after a grievance was filed and approved. Don't open this legal mail outside of the inmate's presence. And so it's opened and approved, and then it was combined with a threat, if you keep breathing this, we're not going to give you any of your legal mail. Well, that's pretty egregious conduct, and the court said that at least stated a non-frivolous First Amendment claim. But that's much more of a pattern and practice and egregious type of conduct than we have here. We just don't have enough here. It's very isolated at one time, and there's just nothing like that alleged in this particular complaint. Thank you, Mr. Fieser. I see your time has expired, but you have reserved five minutes for rebuttal. Mr. Baumrein. Thank you, Your Honors. May it please the court, Michael Baumrein for the Apollo Rico Mitchell. I think I want to start right away at that clearly established prong, because I sense a little bit of conflating the constitutional violation and the clearly established prong. To be clear, El Amin announced what our precedent had already clearly established. I'm going to read again what Judge Grant read earlier. Our precedent clearly establishes that a prison official violates an inmate's constitutional rights when the official opens attorney mail outside the inmate's presence. And that precedent is a couple of cases, but one is the former Fifth Circuit case of Taylor v. Starrett. And Taylor v. Starrett was not a case with a rule prohibiting a pattern and practice of opening legal mail outside of an inmate's presence. It was actually kind of the inverse. It's a rule requiring when opening legal mail, you have to do it inside the inmate's presence every time. So what happened in that case, the district court had entered an order, and the order read, the sheriff is directed not to open mail transmitted between inmates and this is what the former Fifth Circuit said in a published opinion. We hold that that requirement regarding mail is compelled by the constitutional rights of the prisoners. So if you look at El Amin, when El Amin is talking about the clearly established prong, I think it's section B of part two or something, there's no mention of the pattern in practice, because that part is irrelevant to the question of the clearly established law. On the clearly established prong, what matters is the defendant's conduct and whether the defendant would have fair warning that her conduct was unlawful in the situation that she confronted. And I think maybe part of the confusion here is that sort of unlike other 1983 cases, where the clearly established law evolves by describing what the constitutional violation is in that case. Here, the former Fifth Circuit and the Eleventh Circuit, construing the former Fifth Circuit law, establish a bright line procedural safeguard, a rule that must be followed in every circumstance. What does the complaint allege with respect to the instructions about the mail? So the complaint alleges that Detective Simpson directed the jail to open all mail full stop. Stop right there. Okay. All mail is a pattern in practice, is it not? You're right, Your Honor. And so we made that argument in our brief, too. We've argued that to the extent that- This is not an isolated episode when you read that allegation of the complaint, is it? That's correct, Your Honor. I think what you're pointing out is that when the government describes the allegations and the complaint, the pro se complaint, the government is leaving out a bunch of really important facts that make it clear that Mr. Mitchell's free speech rights- Well, Mitchell knows about one piece of mail that was legal. He knows about one. Correct. Well, we don't know how many others may have been open, do we? He does not know that now. But there was an instruction that all of it be open. Correct. And so that's- Do we infer or not? So these are the facts that we'll discover in discovery. But yes, you're right, Your Honor, that you would infer, take all reasonable inferences in the light most favorable to the plaintiff, particularly as a pro se plaintiff. But let me just sort of set the stage here. What happened here? Mr. Mitchell gets an envelope, clearly marked legal mail, from his lawyer. It's not only opened, but Ms. Perkins doesn't deny that she opened it outside his presence. She hands it to him. And then she starts talking about what's presumably inside the envelope. I mean, that standing alone has a chilling effect because now the inmate is thinking, well, I mean, how often is this going to happen? Is this going to happen again? And then we learn that it was pursuant to a directive to open all mail full stop. And when he went to complain about it to Sergeant Clark and said, here's my grievance, this is what I'm complaining about, Sergeant Clark said, stop complaining. And so the combined context is sufficient for that first prong, right, for establishing a chilling effect. But on the clearly established prong, all Mr. Mitchell has to show is that there's a clear rule. Haley v. Sterritt established that clear rule. You got to open- you are welcome. In fact, Haley v. Sterritt said, you don't even have to have probable cause to open legal mail, but you have to do it in front of the inmate's presence. And why did it do it that way? It did it that way because it wanted to quote, this is from El Amin describing Taylor, basically, to ensure that the prison officials will not read and thus not chill attorney-client communications. It's that procedural safeguard. And that clearly was violated. I have a question about your allegations against Clark. Are you suggesting that his conduct was part of the- his conduct discouraging grievances was part of the scheme to read the mail or that he has a separate violation related to discouraging grievances, retaliation, that sort of thing? Your Honor, we're not arguing that Mr. Mitchell has a claim solely on the interception of grievances. What we're saying is when Sergeant Clark gets a grievance and reads that there's a violation of this clearly established rule, what Sergeant Clark should have done is act on it, do something, bring it up to the attention of the superiors, fix the problem. Instead, he exacerbated it by conveying to Mr. Mitchell, this is not something you can complain about, which is actually similar to some of the other cases that we cited in our brief. There's one case, I believe it was the Ninth Circuit case of Nordstrom versus Ryan, where there was just one incident of opening legal mail outside of the inmate's presence. Actually, that might have been inside the inmate's presence, but the jailer said, don't tell me how to do my job or something along those lines. That's the kind of thing that is going to have a chilling effect. And when we get into discovery, we'll explore all of these facts. We're at the 12B6 stage and we're looking at these facts in the light most favorable to Mr. Mitchell. I do want to talk about some of those cases, though. The government was sort of describing a list of district court cases. And I think what the government is saying is that these district court cases are getting it wrong. And so if they're getting it wrong, how can we expect a jailer to get it right? And there's a couple of answers to that question. The first answer is, of course, as this court knows, the clearly established law doesn't come from district court cases issued after the court has announced what the clearly established law is, right? The clearly established law comes from published decisions from this court, like El Amin or the former Fifth Circuit, like Taylor, or the United States Supreme Court. The second point I'd like to raise, which we said in our brief, is if you look at each of those cases, most of them are nowhere near the type of allegations that Mr. Mitchell has here. They're mostly allegations of an inadvertent, one-off, accidental. One of them was like a mail sorting machine that just ripped it open. This court doesn't have to address whether those circumstances rise to the level of a constitutional violation, because that's not what Mr. Mitchell alleged. So that's not what happened here. And the final point I'd like to make about that is that Taylor and Lemon, and we'll talk about Lemon in a minute, and El Amin are clear on what the clearly established law was at the time that Ms. Perkins engaged in her misconduct. So let's talk about Lemon for a minute. When I read Lemon, and maybe the court reads it differently, I don't see that there's any pattern that had anything to do with the court's holding, right? That case was an opening and reading legal mail case, as El Amin describes. The jailer opens the mail, reads it right in front of the inmate, and that has a chilling effect on just one occasion. It doesn't have to happen ever again for there to be a chilling effect. So that should be the end of the inquiry in terms of whether one instance of the First Amendment or Sixth Amendment violation like this, it can state a claim. Mr. Ballmeron, I still continue to mispronounce your name, I apologize. In the Lemon case though, just looking at the statement of the case, the inmate has alleged that the prison guard had opened his legal mail in his presence and read it, and that other prison guards knew of the unconstitutional practice and approved of the practice. So I think that's certainly where the pattern and practice issue is arising in Lemon. How would you address that? I agree, Your Honor, and that is what the court said. But if you look at the holding of the court, as I read it, the constitutional violation wouldn't have ever occurred actually in the Lemon case, I don't think, because if there wasn't an actual incident, and the only incident that was alleged in that case was the incident involving opening and reading legal mail inside of the inmate's presence. But again, to the extent we're talking about clearly established law, Taylor, and Lemon says this, and so does El-Amin, Taylor makes it clear that you can't open legal mail outside of an inmate's presence a single time, and the reason is because you're trying to safeguard against exactly what happened in Lemon, but happened in front of the inmate. So when a piece of legal mail is opened outside of an inmate's presence, and I think Nordstrom, the case of Nordstrom versus Ryan in the Ninth Circuit case made this clear, you know, if a jailer comes and says, you know, I opened this and I opened this by mistake, I'm not even sure that's going to have a chilling effect if the jailer has reason to disbelieve what the, I'm sorry, if the inmate has reason to disbelieve what the jailer said. And here we have lots of reasons to disbelieve, not that Ms. Perkins didn't even say it was an accident, but for Mr. Mistel to think this is the kind of conduct that is going to keep going, because I'm not even allowed to grieve about it, I'm not even allowed to complain about it, and, you know, the government's right, there's no constitutional violation for opening non-legal mail outside of the inmate's presence. But when there's a directive to open all mail, and Mr. Mistel tries to complain about his legal mail being opened, and his mail continues to get tampered, he's going to think, I have no reason to think that my legal mail is not going to get tampered in the same way, in violation of the clearly established rule. And that's what happened here. And that's why the district court erred, and I mean, that's why the district court was correct in denying the motion to dismiss on qualified immunity grounds. And maybe this is helpful, too. I thought this was a helpful way of looking at this. But the clearly established rule is focused singularly on the defendant's conduct. And Judge Hull made that clear in El Amin. It doesn't matter whether the defendant knows that his conduct is going to eventually violate the Sixth Amendment or eventually violate the First Amendment. The consequences of the conduct are irrelevant for the clearly established problem, right? And as the government said, in the Sixth Amendment context, the court and the government left this out of the description, but the court in El Amin said that the defendants were entitled to, sorry, that the law was clearly established, that you couldn't open legal mail outside of an inmate's presence. So it checked that box of the qualified immunity analysis on Sixth Amendment claim. But the court said that the defendants were still entitled to qualified immunity on that claim because there was no harm that resulted. And that shows that for the clearly established problem, what we're talking about is whether the defendant's conduct and a reasonable officer engaged in that conduct at the time would know that the conduct was unlawful. I guess the last point I'd make, unless the court has other questions, is the Ford versus Hunter case. That's a great example of the court doing what we're asking this court to do. I know it's an unpublished decision, but it's the application of just the chilling effect concepts that I think Judge Joflat was referring to as well. There was not a pattern and practice in Ford versus Hunter. When I read the case, I read that there were two incidents that matter. That was what the court said. It was the two incidents and the threat to withhold mail entirely, the surrounding circumstances as a whole, is what stated the constitutional claim. But there is a concern that I've heard from, I think it was Judge Branch, about what role does intent play. And again, if you look at, for example, the Bivey case, I'm sorry, the Hayes case, Judge Bivey's concurring opinion in that case, you can see that there may be circumstances where a one-off inadvertent oops mistake is just, with no other surrounding circumstances, is just not enough to plausibly infer a chilling effect. And again, that's not what Mr. Mitchell has alleged here. Do you have to plead anything specifically about the fact that speech was chilled on the basis of these acts, or is it enough to assume that speech is chilled? So that's a great question, Your Honor. And the answer is no. We know that for a couple of reasons. One is, I went back and looked at the complaint that El-Amin drafted in his case. El-Amin was also pro se at the time. No magic words, no chilling effect. And this court has held that there is no need to use magic word, particularly if you're a pro se plaintiff. What the court should do is look at the allegations as a whole and ask, is this enough for it to plausibly infer that his free speech rights would be chilled? And Ford versus Hunter confirms that. Apply that same chilling effect. When you have a pattern in practice, it's much easier. Absolutely. But El-Amin did not say that only a pattern in practice is sufficient to establish a chilling effect. In fact, there are plenty of cases across the country that established that the chilling effect is something that can happen based on the totality of the circumstances. And certainly an intentional violation of the clearly established rule about opening legal should suffice. Unless there are no other questions, Your Honor, we ask the court to affirm the denial of the motion to dismiss and let this case proceed into discovery. Thank you. Mr. Fieser, you have five minutes left. Thank you, Your Honor. Going back to El-Amin, again, it is true and it can't be denied that the Taylor and Guajardo cases or the cases from the mid to late 70s from the former Fifth Circuit state that an inmate does have the right to have his legal mail read in his presence. There's no doubt about that. The question is, for a First Amendment claim, does there need to be more than just one incident, one isolated incident of reading a person or opening, we don't know if she read it, but opening an inmate's piece of legal mail outside of his presence states a First Amendment claim based on a chill of communications with his clearly says it's not. It has to be a pattern of practice. It has to be more than one isolated incident. It's not that district courts since then, again, I would agree that district courts don't set the clearly established precedent this court does or the United States Supreme Court. However, it's not that the district courts have gotten it wrong, but they've clearly construed El-Amin to mean if you're going to try to state a First Amendment claim, a violation of your First Amendment, it has to be regular and unjustified something more than one time. What about the fact that the complaint alleges a directive to confiscate and review all mail? Why wouldn't that be enough? If a pattern of practice is necessary, why wouldn't that be enough to establish that a pattern of practice was alleged? He may have only explicitly learned of one opening outside of his presence, but with that directive, why isn't that sufficient? The directive from Detective Simpson was, you're correct, to monitor, open, review this particular inmate's mail. Incidentally, we do know in the record why that occurred, why that directive occurred. It's because he was ultimately convicted for tampering with a witness. There was a previous version of Mitchell's complaint that attached as evidence, he called it, that actual directive, what the directive was and why that actually happened. There's no directive on the part of Detective Simpson to open legal mail outside of his presence or otherwise commit some sort of constitutional violation. There's nothing wrong if there's a legitimate concern for safety, et cetera, with a directive to monitor a prisoner's mail because they might pose some sort of security risk. She didn't direct anyone to do anything unconstitutional or to open anything outside of his presence. And if they followed the directive completely, it would necessarily involve reviewing all of the mail, right? So maybe it would show on discovery that that's not what happened or that that's not how they interpreted that directive. But if we take the complaint for what it says, don't we have to assume that the directive was to open all mail, including legal mail? Yes, Your Honor. And that's not unconstitutional. There's nothing unconstitutional about opening somebody's legal mail as long as the inmates there when you do it. There's only one instance that didn't happen. So if you think about it, we're on the fifth amended complaint. This particular inmate has amended the complaint five times. And this is all we still have. We don't have any other indication that any other incident with his attorney happened at all. We certainly know that he pled guilty voluntarily, went to prison for murder. Mr. Feser, we know from the complaint and you have to infer that all mail was open. Yes, Your Honor. All right. We don't know whether any mail was open before this episode. And we don't know what specifically whether any was afterwards. Yes, Your Honor. Okay. Yes. Okay. That we infer that it was all open anyway. And we know from the complaint that this particular mail was open and was read. And the officer talked to him about the case. Yes, Your Honor. Okay. So you're ignoring it if your one time argument is that if that's all that the inmate is able to prove, there's no case. But the inmate is alleging that all mail is open. Let's assume that's what the facts are. Yes, Your Honor. Okay. The actual directive from Detective Simpson was to monitor open all mail. All mail. Not to open legal mail outside of his presence. No, no, no. Open all mail. Yes, Your Honor. And we know that it was open outside his presence. One time, Your Honor. Yes. When we know about one, yes. Right. Okay. Right. I'm sorry, Your Honor. Well, you're saying we cannot infer that other mail was open. Legal mail. Yes, Your Honor. I mean, you have to draw reasonable and plausible inferences from what's alleged in the complaint. And we would argue it's not reasonable to infer that any other legal mail was ever— In other words, we have to say that that was the only legal mail that was received. Not necessarily received, Your Honor, but there's no reasonable inference or plausible inference that any other legal mail was open. The one time it was open, it was given back to him. And your photographs are in the property room. Here's your legal mail back. There's no other allegations of that ever happened since or before that, just that one time. So we just don't have anything else here other than an isolated incident after what is essentially six tries. Is your argument that he only received one piece of legal mail? No, Your Honor. Can we infer that he received other legal mail? I'm not sure that that's reasonable to infer from the complaint at all whether he received any other legal mail. There's just no way to tell that. What we know from the allegations is one time mail was opened outside his presence and given back to him. It may have been in a stack of his mail, and everything was open, and these were photographs that you can't have in your cell and put them in the property room. But that's the only thing that's plausibly alleged in the complaint, and we would argue that that's not enough for a First Amendment violation. Would two times be enough? There's some indication, Your Honor, that two times is still maybe not a pattern or practice, but it would certainly, depending on the circumstances, it would be closer to being enough than one time, than an isolated incident. Now, there could be perhaps two times over the course. I mean, he was in this jail for two years before he went to prison. If it happened once each year, maybe that's not enough for a pattern or practice. It needs to be something more, something that actually chills his communication with the attorney. Keep in mind, he never alleges anything in the complaint that his communications with his lawyer were ever chilled or prevented in any way. We know that he got legal representation, and we know that he from the complaint and from the attachments that the district court took judicial notice of. All those things happened, and he got representation. So there's no allegation that he couldn't communicate with his attorney or that he couldn't send letters back and forth to her. There's nothing at all related to outgoing mail other than the one incident where he sent mail to his wife. There's nothing where he's saying that I sent mail to my attorney and it was intercepted or anything like that. And I want to go back real quickly to the- Mr. Fieser, your time has expired. But thank you both. We have your case under submission.